LAND, J.
Mrs. Caroline Saur made her iast will on November 14, 1911, and died on November 19th of the same year. The testament contained the following disposition, to wit:
“I give and bequeath to my daughter, Julia Saur, all the household effects in my home. 2121 Annunciation street; also my jewelry, and the sum of five hundred dollars, the above to be over and above her share, the legacy being made to Julia because I have received from her at various times sums of money equal to that amount, as well as receiving her services to me during my sickness.”
On the day the will was executed the testatrix had in her possession a check for $2,-539.10, the proceeds of a sale of real estate made about November 2, 1911. The will was probated on the 24th of the same month, and an inventory was made on the next day in the presence of the executor and the heirs. A diligent search of the premises of the testatrix and an examination of her bank box was made by the notary and his assistants. No money was found. Miss, Julia Saur stated, in the presence of the notary and other persons present, that Mrs. Caroline Saur indorsed the check and that she at her mother’s request went to the bank and cashed the check and delivered the money into the hands of Mrs. Caroline Saur. Miss Julia Saur further stated that she was unable to say where the money was as her mother had the habit of hiding money and secreting the same. Mrs. Clara David, another of the heirs, stated to the notary that, in the lifetime of her father, her mother had the peculiar habit of hiding and secreting money in different parts of the house.
On February 1, 1912, the executor, through his counsel, represented in a motion to the court that Miss Julia Saur had cashed said cheek on November 15, 1911, and that he had been informed and believed that the proceeds of said check were in her possession or under her control, or that she had actual knowledge of the whereabouts thereof and should be compelled to disclose the whereabouts of said proceeds so that the same might be included in a supplemental inventory.
The rule concluded with the prayer for an order that Miss Julia Saur show cause'why she should not disclose the present whereabouts of said funds so that the same might be included in a supplemental inventory. The rule was served on Miss Julia Saur at her domicile, but she does not appear to have filed an answer until May 30, 1912, several days after judgment in the court below. .The rule, however, was tried without objection and, after the introduction of a mass of evidence, was dismissed at the cost of the succession of Mrs. Caroline Saur.
In his reasons for judgment the judge below stated that, considering the declarations of the inventory and the statements made to the executor, it was his duty to file the rule to ascertain where the money was in order to have the same inventoried. After' this statement the judge continued as follows:
“Considering the positive testimony in the record, especially of the three witnesses who swore positively that Miss Julia Saur delivered the proceeds of the check for $2,359.10 to her mother, the deceased, and that her mother paid her what she held on deposit for her and retained the balance, and considering the declarations of the deceased as to what she would do with the money before one of her sons should get any of it, her animosity to her son and his animosity to her, considering also her habit of concealing money, and that there is no positive testimony showing that Miss Julia Saur knew what her mother did with the money, or where it now is, and against her there are only sus-' picions and improbabilities she could not have earned the money her mother had on deposit for her and returned to her, and considering all the positive testimony in the record shows she does not know where the money is, and that positive testimony must be considered and must outweigh suspicions, probabilities, and possibilities, the rule is dismissed.”
The will of Mrs. Caroline Saur was made on November 14, 1911, before John Wagner, notary public, at her residence, in the city of New Orleans. The proces verbal recites that the notary and witnesses found Mrs. I Saur “sick in body but well in mind.”
*879 On November 2, 1911, Mrs. Saur received a check for $2,539.10, drawn on the Commercial-Germania Trust & Savings Bank, and signed p. p. H. L. Loomis, Jr., Notary Public, for Edmund Wegener. At some time between November 2 and 15, 1911, the check was indorsed as follows:
“Mrs. O. Saur.
“Julia Saur.
“Indorsement O. K.
“H. L. Loomis, Jr., Notary Public.” •
This check was presented to the bank for payment on November 15, 1911, by Miss Julia Saur, and was paid to her in a certificate of deposit to her order for $1,000 and the balance in currency. On the face of the indorsements the title to the check was vested in Miss Julia Saur, who converted $1,000 of the proceeds to her own use, by investing the same in a certificate of deposit payable to her own order. On the same day Miss Julia Saur invested $1,100 in currency in the stock of the Mutual Building & Homestead Association.
Mr. Heintz, the executor, testified that Miss Julia Saur told him that “her mother gave her the money and gave her the cheek” and that “she put some in bank and some in the homestead.”
The statement of Miss Julia Saur to the notary at the time of the making of the inventory that she “cashed the check, secured the money, and brought it back and delivered the money into the hands of Mrs. Caroline Saur” cannot be true as to the $1,000 of the proceeds of the check invested in the certificate to the order of Miss Julia Saur. The fact that no money whatever was found in the bank box or on the premises of the deceased after her death corroborates the theory. that Miss Julia Saur converted the proceeds of the check to her own use.
As before stated, Miss Julia Saur filed no answer to the rule sued out by the executor but adduced a mass of evidence from which it appears that her line of defense was as follows: That she, between the ages of 10 and 18, worked in various millinery and dry goods shops and restaurants at small weekly wages out of which she paid her mother $3.50 per week for board. That her mother kept all of her daughter’s wages, less the amount of the weekly board, until the accumulations aggregated the sum of $2,115.
That on November .15, 1911, her mother handed to her the sum of $2,115.10 in currency, advising her to deposit the same in the bank and homestead association, and then handed her the check for $2,539.10 to be cashed and the money to be delivered to the mother. That Miss Julia Saur substituted $1,000 of her own money for the same amount of the proceeds of the check covered by the certificate of deposit and delivered to her mother the full sum of $2,539.10 and on the same day invested $1,100 of her own money in the stock of the homestead association-.
The testimony of Miss Julia Saur as to the delivery of the sum of $2,115 to her, and the return of the money to her mother, is corroborated to a certain extent by the testimony of two of her sisters, who, however, knew nothing of the amount of wages on deposit in the hands of their mother for account of her daughter Julia. The latter as a witness was closely examined in order to ascertain what wages she had earned during the period mentioned by her. Taking her own statements, her net wages during that time did not aggregate over $1,100. Her statement that she commenced work in 1902, “right after she left school,” is contradicted as to the year by the records of McDonough School No. 1, which show that she was admitted October, 1903, and left June, 1904, and was 11 years of age, presumably at the time of her admission.
According to the testimony of Miss Julia *881 Saur, none of her wages were used for dress, amusements, or sundry expenses, but the total amounts, less board, remained on deposit with her mother, and her mother used none of the wages on deposit except small sums which were replaced.
The mother, however, speaking through her last will and testament made on November 14, 1911, declared that she had at various times received from her daughter Julia sums of money equal to the amount of $500; and in the same instrument the mother made her daughter Julia a special legacy of $500 for the purpose of reimbursing her. If the testatrix had used $500 of the wages deposited with her, she could not the next day have had on hand the sum of $2,115 belonging to her daughter.
On the whole case we are of opinion that the defendant in rule has not satisfactorily accounted for the proceeds of the cheek received by her on November 15, 1911, and that the-evidence is sufficient to warrant the inventory of the claim of the succession against her, leaving the question of her liability to be determined in a direct action by the executor.
It is therefore ordered that the judgment below be reversed, and it is now ordered that the rule sued out by the executor be made absolute to the extent of ordering an inventory of the claim of the succession against Miss Julia Saur for the sum of $2,539.10, representing the proceeds of the check for said amount, collected by her on November 15, 1911; and it is further ordered that said defendant in rule pay costs of appeal, and that the costs below be paid by the succession; and it is further ordered that the legal liability of the defendant in rule for said sum, or any part thereof, be reserved for future adjudication in a direct action.
BREAUX, O. J., dissents.